IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 1:16-cv-00626-CBS

LEEANN M. SHERIFF,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

     This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Leeann M. Sheriff's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated July 28, 2016, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to D.C.Colo.LCivR 72.2 and Title 28 U.S.C. § 636(c). *See* Doc. 20. The court has carefully considered the Complaint (filed March 16, 2016) (Doc. 1), Plaintiff's Opening Brief (filed June 23, 2016) (Doc. 15), Defendant's Response Brief (filed July 13, 2016) (Doc. 16), Plaintiff's Reply Brief (filed July 27, 2016) (Doc. 19), the entire case file, the administrative record, and applicable case law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In June 2013, Plaintiff filed an application for disability benefits and supplemental security income, alleging a disability onset date of February 23, 2012. (*See* Social Security Administrative Record (hereinafter "AR") at 32, 194). Plaintiff alleged that her ability to work was limited by post-traumatic stress disorder, obsessive compulsive disorder, anxiety, depression, closed head injury, migraines, difficulty reading, difficulty understanding basic concepts, dyslexia, asthma, and fetal alcohol effects. *See Id*. at 263. Plaintiff was born on May 15, 1973, and was 38 years old on the date of her alleged disability onset. *Id*. at 41, 259. She has a high school diploma and completed two years of college coursework. *Id*. at 41, 264. She has worked in a variety of jobs including as a bus driver, a pharmacy technician, and a certified nurse's assistant. *Id*. at 284-85. After her initial application was denied, Plaintiff requested a hearing, which was held on July 29, 2014, before an Administrative Law Judge ("ALJ"). *See Id*. at 48-73, 103.

Plaintiff was represented by counsel at the hearing and testified that she suffered from seizures and tics, but she stated that her grand mal seizures were being controlled with medication. *Id*. at 54-57. She also testified that due to her medication and twitching episodes, she was always tired and overwhelmed, which caused her to stay at home. *Id*. at 65. Plaintiff stated that she also had difficulty concentrating and would often "zone out," and that she had trouble comprehending and remembering information, reading, writing, and following instructions. *Id*. at 58-60. She further testified that she suffered from migraine headaches and ringing in her ears. *Id*. at 58. Plaintiff did state that she was able to cook, clean, and do laundry. *Id*. at 65.

A vocational expert ("VE") also testified at the hearing. *Id*. at 70-72. The VE testified that Plaintiff's prior work experience was classified as "semi-skilled" work that was performed at a "light" exertional level as defined by the Dictionary of Occupational Titles exertional guidelines. *Id*. at 70. The ALJ asked the VE to assume hypothetically that a younger individual — with the same education and past work experience as Plaintiff — had the following limitations: (1) could perform a limited range of medium work activity; (2) subject to seizure precautions, including no operating of motor vehicles, being around dangerous machinery, or working at heights; (3) capable of adequate work interactions with supervisors, the public, or coworkers on a frequent basis; and (4) limited to routine, repetitive type work of an SVP 1 or 2 complexity . *Id*. at 70-71.

Based on these restrictions, the VE identified three jobs that someone with those limitations could perform and testified about the number of each position in the regional and national economy: (1) dining room attendant (391,290 National); (2) industrial cleaner (2,068,460 National); and (3) office helper (83,250 National). *Id*. at 71-72. The ALJ then posed a second hypothetical in which he asked the VE to assume that the individual's concentration and persistence would be frequently interrupted, meaning that she would be off task more than 20 percent of a workday. *Id*. at 72. The VE testified that, under these conditions, all of the previously identified jobs would be eliminated. *Id*.

On September 3, 2014, the ALJ issued his decision denying benefits. *Id*. at 29-47. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[1] At step

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R.

one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since February 23, 2012. *Id*. at 35. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: seizure disorder versus tick disorder; history of ovarian and uterine cancer, status post-resection, in current remission; history of pulmonary embolism; obesity; and anxiety disorder with post-traumatic stress syndrome. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 36-37.

> The ALJ then assessed the following residual functional capacity ("RFC"):
>
>> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, she can lift and carry 50 pounds occasionally and 25 pounds frequently, and sit for 6 hours and stand and/or walk for 6 hours in an 8-hour day. The claimant has seizure precautions in that she cannot operate a motor vehicle as part of her work duties, and she cannot work around dangerous hazards or unprotected heights. The claimant has adequate social interactions and can frequently interact with others at the workplace. She maintains the concentration, persistence and pace to perform routine, repetitive work activities in jobs with an SVP of 1 or 2.

*Id*. at 37. In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records. The ALJ noted many of Plaintiff's medical records were inconsistent with her claims regarding the disabling nature of her impairments. *Id*. at 38-41. In addition, the ALJ credited the opinion of Dr. Frederick Leidal, a consultative psychological examiner, who examined Plaintiff and provided opinions regarding Plaintiff's limitations. *Id*. at 40. Dr. Leidal concluded that Plaintiff had an average ability to understand, remember, and carry out simple instructions. *Id*. The ALJ accorded little weight to the other evaluations in the record because

---

§ 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

they were not supported by the medical evidence and they appeared to be based more on the Plaintiff's subjective complaints. *Id*. at 41. The ALJ also found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "not credible" to the extent that they were inconsistent with the RFC. *Id*. at 38.

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not perform any past relevant work. *Id*. at 41. At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 42. Specifically, the ALJ found that Plaintiff could work as a dining room attendant, an industrial cleaner, or an office helper. *Id*. Because there was a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review and submitted additional evidence. *Id*. at 28, 11-23. On January 16, 2016, the Appeals Council concluded that the new evidence did not affect the ALJ's decision and denied Plaintiff's request for review. *Id*. at 1-7. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on January 28, 2014. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial

evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ erred in the following ways: (1) the ALJ erred in his consideration of the medical evidence; and (2) the conclusion that Plaintiff is capable of performing other jobs in significant numbers is not supported by substantial evidence. In addition, Plaintiff contends that the case warrants remand for consideration of the new and material evidence that was submitted to the Appeals Council. These arguments are not persuasive.

**A.     ALJ's Consideration of Medical Evidence**

Plaintiff argues that the ALJ erred in his assessment of the medical evidence. Doc. 15 at 9-14. Specifically, Plaintiff contends that the ALJ's evaluation of the medical source opinions is not supported by substantial evidence. *Id*. The court does not agree.

Under 20 C.F.R. § 404.1527, "[t]reating source medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). The Tenth Circuit has set forth those factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (internal quotation marks omitted). A treating source is a medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). It is a relationship that requires both duration and frequency. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.").

Where, as here, none of the medical opinions at issue constitute "treating sources,"[2] the court, nevertheless, evaluates them by applying the same factors as are generally used to assess treating source opinions. Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6).

With regard to Dr. Crockett's opinion — finding a greater level of functional impairment than found in the ALJ's decision — the ALJ noted that this determination was inconsistent with the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Specifically, the ALJ reasonably observed that Dr. Crockett's assessment was based more on Plaintiff's subjective complaints than objective findings. *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001) (affirming the ALJ's decision to discount a medical opinion that was based primarily on the claimant's subjective assertions rather than objective medical evidence).

Plaintiff contends that the ALJ erred in his analysis of Dr. Crockett's opinion by relying on her activities of daily living, and she argues that her daily activities were more nuanced than the ALJ's opinion suggested. Plaintiff is correct that "minimal" daily activities, *alone*, do not establish that a claimant is capable of engaging in gainful employment. *Thompson*, 987 F.2d at 1489; *see also Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (daily activities); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (jogging and intermittent work as a janitor); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (working in the yard, performing a few household tasks, working on cars, taking occasional trips with brother in camper).

---

[2] Drs. Crockett and Leidal provided one-time consultative examinations. In addition, Dorothy Renner is a professional counselor, not a doctor. 20 C.F.R. § 404.1513(a) (defining — for the purposes of this case — "acceptable medical sources" as licensed physicians and licensed or certified psychologists). Finally, there is no evidence that Dr. Nebel had a treating relationship with Plaintiff. Rather, he appears to have simply co-signed Ms. Renner's assessment.

8

However, even assuming, for the sake of argument, that the ALJ erred in his consideration of Plaintiff's daily activities[3], remand would not be warranted. Plaintiff's daily activities were but one of the reasons supporting the ALJ's conclusions. The ALJ also considered the fact that Dr. Crockett's assessment was not entirely consistent with her own objective findings. AR at 40. *See White*, 287 F.3d at 207-08 (ALJ noted the discrepancy between the physician's restrictive functional assessment and her contemporaneous examination when rejecting the opinion). For example, Dr. Crockett noted that Plaintiff's attention and calculation were average and that she performed math questions correctly and spelled a simple word backwards without error. AR at 323. In addition, Plaintiff's abstract ability was average, she was able to follow two steps of a simple three-step direction, she wrote a sentence correctly, and she copied a simple design accurately. *Id*.

The ALJ also relied on the observations of the CDI fraud investigators in reaching the conclusion that Plaintiff had a greater capacity for work than suggested by Dr. Crocket. *Id*. at 40. Although Plaintiff claimed to have anxiety about going out into public alone, the investigators reported that Plaintiff walked around a public street at a normal pace and that she made good eye contact and was friendly when they spoke to her. *Id*. at 330. Plaintiff seems to contend that this evidence was unreliable because neither of the investigators had any apparent medical training; however, she cites no law for this requirement. Doc. 15 at 13. Indeed, the regulations specifically contemplate the use of nonmedical evidence in evaluating claims. 20 C.F.R. § 404.1513(d).

---

[3] In asserting that her activities of daily living are more nuanced that the ALJ portrayed them, Plaintiff cites her "Function Report." AR at 276-83. Interestingly, the court observes that these nuances are not contained in Dr. Crockett's report. *See* Id. at 322. When Plaintiff communicated difficulties in various activities (grocery shopping), Dr. Crockett made specific notations in that regard. Dr. Crockett did not, however, make any notations regarding Plaintiff's alleged limitations in her other activities of daily living (housework, computer time, mental games, laundry, cooking, and finances).

Plaintiff also contends that the ALJ inappropriately credited the CDI investigators over the doctors. Doc. 15 at 13-14. This mischaracterizes the ALJ's discussion. The ALJ did not give credence to the CDI investigator's findings; indeed, these investigators did not make any findings, only observations of Plaintiff's behavior. AR at 326-33. Rather, the ALJ evaluated the medical opinions in light of the seemingly contradictory observations of the investigators, as he was entitled to do. *See* 20 C.F.R. § 404.1513(d). Thus, the ALJ did not err in considering this information when determining whether Dr. Crockett's evaluation was consistent with the record as a whole.

Plaintiff also takes issue with the ALJ's assessment of Dr. Leidal's opinions. Doc. 15 at 13. However, Plaintiff's "argument" amounts to little more than a conclusory assertion of error. Plaintiff first notes that Dr. Leidal stated that Plaintiff's "ability to withstand the mental stress and pressures associated with day-to-day work activity appears below average, comprised by her cognitive complaints." Doc. 15 at 10. Plaintiff next quotes portions from two Social Security Rulings, *id.* at 13, but then makes no attempt to apply these rulings to the facts of her case. As Defendant correctly points out, Plaintiff does not explain how being "below average" in managing stress is disabling. In fact, the ALJ observed that Dr. Leidal had offered no insights in that regard either. Because Plaintiff's argument is cursory and undeveloped, the court declines to consider it further. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review."); *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 1999) (declining to address arguments where claimant "failed to support [her] contention with any developed argumentation").[4]

---

[4] Similarly, Plaintiff summarizes a report that was apparently authored by Dorothy Renner, LPC, and co-signed by Dr. Nebel. Plaintiff does not, however, address the ALJ's specific analysis regarding Dr.

Finally, Plaintiff argues that the ALJ erred in his assessment of Plaintiff's CT scans. *See* Doc. 15 at 11-12. In his opinion, the ALJ observed that Plaintiff's CT scans were all negative. AR at 39. The ALJ went on to state that these negative results weighed against Plaintiff's claims of traumatic brain injury and diminished the persuasiveness of her alleged increase in mental symptoms and cognitive limitations. *Id*. The ALJ did not find these results to be dispositive, but rather, considered them in the context of the record as a whole. Plaintiff's arguments regarding the evidentiary value of a negative CT scan, Doc. 15 at 11-12, appears to be little more than a thinly veiled request for this court to reweigh the evidence, which it cannot do. *Oldham*, 509 F.3d at 1257. This court may review only the sufficiency of the evidence; and in this case, there was enough evidence to support the ALJ's assessments of the medical opinions. Even if "the evidence may have also supported contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a difference choice had the matter been before it de novo.'" *Id*. (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

**B.     Sufficient Jobs in the National Economy**

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR at 42. Specifically, the ALJ found that Plaintiff could work as a dining room attendant, industrial cleaner, and office helper. *Id*.

---

Nebel. Rather, she simply makes passing reference to Dr. Nebel in her other assertions of error. It is unclear whether Plaintiff even takes issue with the ALJ's reasoning regarding Dr. Nebel. But to the extent that she does, the court does not consider her arguments to be properly developed and it will not address them. *See Keyes-Zachary*, 695 F.3d at 1161; *Wall*, 561 F.3d at 1065.

At the hearing, the ALJ heard testimony from the VE. The ALJ posed hypotheticals to the VE that involved all of the physical and mental aspects of the RFC ultimately adopted by the ALJ. *Id*. at 70-71. The VE testified that someone with those restrictions could work as a dining room attendant, industrial cleaner, and office helper. *Id*. at 71.

On appeal, Plaintiff notes that the VE also testified that those three jobs would be eliminated if the worker's concentration, persistence, and pace would be off-task for more than 20 percent of the workday. Doc. 15 at 19-20. She further contends that the record evidence supports a finding that she would be off-task more than 20 percent of a work day and, therefore, that the ALJ had the burden to prove that other qualifying jobs existed in significant numbers. *Id*. The court is not persuaded.

As discussed above, the court — in its discussion affirming the ALJ's assessment of the medical opinions — has concluded that the RFC was based on and supported by substantial evidence. Because the ALJ's first hypothetical question was based on the RFC, and because the RFC was supported by the record, the court concludes that the ALJ neither erred in posing its hypothetical nor in relying on the VE's testimony regarding the existence of jobs that Plaintiff could perform. *Ellison*, 929 F.2d at 537 (VE's testimony that jobs existed that claimant could perform constituted substantial evidence supporting ALJ's conclusion that claimant was not disabled). Therefore, the court concludes that the ALJ's step five finding — that there were significant jobs in the national economy that Plaintiff could perform — is supported by substantial evidence.

**C.    Sentence Six Remand**

Plaintiff argues that the court should remand this case to the Commissioner on the ground that new evidence has come to light that may have changed the outcome of the case. Doc. 15 at

14-19. Under the sixth sentence of 42 U.S.C. § 405(g), the court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Plaintiff relies on one "new" piece of evidence that she believes should compel the court to remand the case to the Commissioner for reevaluation pursuant to Section 405(g): an EEG evaluation that was conducted in October 2014. The court concludes that Plaintiff has not satisfied her burden with respect to this piece of evidence.

Even if the court were to conclude that there was good cause[5] for Plaintiff's failure to incorporate this new evidence into the record, Plaintiff has not demonstrated that the results of the new EEG evaluation meet the sentence six standard for remand. In order for new evidence to be considered material for purposes of a sentence six remand, the court "normally must determine that the new evidence would have changed the [Commissioner's] decision had it been before [her]." *Hargis v. Sullivan,* 945 F.2d 1482, 1493 (10th Cir. 1991). "Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied." *Id.*; *see also Williams v. Barnhart*, 178 F. App'x 785 (10th Cir. 2006) (concluding that a remand was "not appropriate in this case because the new evidence does not demonstrate that the findings relate back to the period on or before the date of the ALJ's decision").

Here, the new EEG evaluation was conducted in October 2014, over one month after the date of the ALJ's decision. AR at 14-16. *See* 20 C.F.R. § 404.620(a) (the claimant's application remains in effect until the ALJ hearing decision is issued). Although the evaluation refers to Plaintiff's history of self-reported traumatic brain injury and seizures, there is no information

---

[5] The exam occurred after the ALJ issued his decision; thus, this evidence could not have been submitted any earlier.

regarding how the October 2014 observations were (or were not) retrospectively related to Plaintiff's condition during the relevant time period. *Id*. While the October 2014 EEG study might be material to a new application, it is not probative of her condition at the hearing before the ALJ. *See Sanchez v. Health & Human Servs.*, 812 F.2d 509, 512 (9th Cir. 1987) ("The new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing."); *see also Villalobos v. Colvin*, 544 F. App'x 793, 796 (10th Cir. 2013) (refusing to remand based on a doctor's opinion submitted only to the Appeals Council, where the doctor's diagnosis was not retroactive).

Without the necessary demonstration that the new functional capacity evaluation relates to the period for which the benefits were previously denied, the court cannot remand the case under sentence six.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Sheriff was not disabled within the meaning of Titles II and XVI of the Social Security Act and, therefore, not eligible to receive Disability Insurance Benefits or Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own fees and costs.

DATED at Denver, Colorado, this 10th day of February, 2017.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge